UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN DOE,

      Plaintiff,

v.                                                              Case No: 8:13-cv-2467-T-27EAJ

ST. JOHN'S EPISCOPAL PARISH DAY
SCHOOL, INC., ST. JOHN'S CHURCH,
EPISCOPAL DIOCESE OF
SOUTHWEST FLORIDA, INC., JON
CARIDAD and JAMES BIGGERS,

      Defendants.
_____/

## ORDER

**BEFORE THE COURT** are three motions to dismiss the Complaint: (1) Defendant, Jon

Caridad's, Motion to Dismiss Plaintiff's Complaint (Dkt. 5); (2) Defendant, Episcopal Diocese of

Southwest Florida, Inc.'s, Motion to Dismiss Plaintiff's Complaint (Dkt. 8); and (3) Defendants St.

John's Episcopal Parish Day School, Inc.'s and St. John's Church's Motion to Dismiss (Dkt. 6).

Plaintiff has responded to each in opposition (Dkts. 7, 11, 15).  Upon consideration, the Motions

(Dkts. 5, 6, 8) are GRANTED in part and DENIED in part.

**I.      Introduction**

      Plaintiff alleges that he was sexually and physically abused by Defendants Jon Caridad and

James Biggers at various times between 1971 and 1975 (Dkt. 1 at ¶¶ 25, 30).  During that time,

Caridad was a priest at St. John's Church (the "Church") and a teacher at St. John's Episcopal Parish

Day School (the "School"), which was operated by the Church (*id.* at ¶ 3).[1]  Biggers was also employed by the Church and the School, serving as Choir Master at the Church and a teacher at the School (*id.* at ¶ 6).  Both the Church and the School were allegedly organizations of Defendant Episcopal Diocese of Southwest Florida, Inc. (the "Diocese"), a religious entity, which allegedly maintained operational authority and control over its churches, congregations, and schools (*id.* at ¶¶ 10-12).[2] The abuse is alleged to have occurred while Plaintiff was a congregant of the Church and a student at the School (*id.* at ¶¶ 19, 20).  Plaintiff also alleges that his memory of the abuse was "extinguished because of the trauma and the resulting traumatic amnesia or repressed memory syndrome," and Plaintiff therefore had no memory of the abuse until it resurfaced in 2011 (*id.* at ¶ 38).

Counts I and II of the Complaint assert claims of battery, abuse, and sexual battery against Caridad and Biggers. Counts III through VI are claims for vicarious liability under a theory of respondeat superior (Count III), negligent supervision and retention (Count IV), negligence (Count V), and breach of fiduciary duty (Count VI) brought against the Church, the School, and the Diocese.

Caridad, the Church, the School, and the Diocese move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. All four argue that the claims are barred by the statute of limitations.  Plaintiff contends that based on the delayed discovery doctrine, the cause of action did not accrue for statutes of limitations purposes until Plaintiff recalled the alleged abuse.  In addition, the Church, the School, and the Diocese argue that the Complaint suffers from other deficiencies warranting dismissal for failure to

---

[1] More particularly, the Church and the School are alleged to have been the same entity until 2000, when the Defendant corporate entity, St. John's Episcopal Parish Day School, Inc., was formed (Dkt. 1 at ¶ 3).

[2] The Church, the School, and the Diocese are hereinafter collectively referred to as "the Church Defendants."

state a claim. Caridad argues that the claims are barred by the First Amendment and that Plaintiff may not bring this lawsuit anonymously.

## II.    Standard

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain enough facts to make a claim for relief plausible on its face." *Resnick*, 693 F.3d at 1324-25. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."

*Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (quoting *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).

## III.   Discussion

### 1.   Statute of Limitations

Plaintiff filed this action on September 24, 2013 alleging that he was sexually abused by Defendants Caridad and Biggers while they were employed by the School and/or the Church and while Plaintiff was a student, congregant, and altar boy, but that he "had no memory of any act of abuse he suffered until 2011." (Dkt. 1 at ¶¶ 9-39). According to the allegations in the Complaint, "[t]he events giving rise to this complaint occurred between 1971-75," nearly four decades ago. (*Id.* at ¶ 9). As such, Defendants contend that the statute of limitations applicable to the claims against the Church, School, and Diocese have long expired.[3]   Plaintiff asserts that the delayed discovery doctrine, as adopted by the Florida Supreme Court in *Hearndon v. Graham*, 767 So. 2d 1179 (Fla. 2000), operates to save his claims.

Defendants recognize that the delayed discovery doctrine saves Plaintiff's intentional tort claims (battery, abuse, and sexual abuse) against Caridad and Biggers.   However, they contend that the Florida Supreme Court limited its holding in *Hearndon* to intentional tort claims against the perpetrator of the abuse and therefore, the doctrine is not applicable to Plaintiff's non-intentional tort claims against the Church Defendants (Counts III-VI).[4]   This proposition is supported by the Third District Court of Appeal's decision in *Cisko v. Diocese of Steubenville*, 123 So. 3d 83 (Fla. 3d DCA

---

[3] Defendant Caridad argues that the entire Complaint should be dismissed as untimely. His additional arguments will be further addressed separately.

[4] In general, the statute of limitations for Plaintiff's claims against the Church Defendants is four years. *See* Fla. Stat. § 95.11(3)(a) (negligence claims), § 95.11(3)(p) ("catch-all" provision).

2013).  Plaintiff asserts that the Third District wrongly decided the issue and this Court is not obligated to follow it.  Plaintiff also argues that his claim for Vicarious Liability/Respondeat Superior (Count III) is a claim based on the intentional torts of Caridad and Biggers and thus, the delayed discovery doctrine applies to its accrual.

### a.   *Hearndon v. Graham*

"The 'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." *Hearndon v. Graham*, 767 So. 2d at 1184.  In *Hearndon*, the plaintiff sued her stepfather for injuries allegedly caused by the sexual abuse committed by her stepfather beginning in 1968 and continuing until 1975.  *Id.* at 1181.  The complaint was not filed until 1991 because she allegedly suffered from "traumatic amnesia" or a related syndrome until 1988.  *Id.*  The trial court dismissed the complaint as barred by the four-year statute of limitations applicable to civil actions for injury or damages caused by an intentional tort.  *Id.*  The First District Court of Appeal held that the statute of limitations was not tolled based on the delayed discovery doctrine, but certified the question in the case to the Florida Supreme Court.  *Id.* at 1181-82.

The Supreme Court determined the delayed discovery doctrine operates to delay the accrual of a cause of action, as opposed to tolling the statute of limitations, and held that the delayed discovery doctrine applies to childhood sexual abuse cases accompanied by traumatic amnesia.  *Id.* at 1181-82, 1186.  The court reasoned that such an application is fair, given the nature of the alleged tortious conduct, its effect on victims, and the general application of the doctrine to tort cases.  *Id.* The court did rely on Florida Statute section 95.11(7), since the plaintiff's action was based on abuse

5

that occurred from 1968 to 1975, preceding the effective date of that statute.[5]   *Id.* at 1186.

### b.   *Cisko v. Diocese of Steubenville*

In *Cisko*, the Third District Court of Appeal concluded that the delayed discovery doctrine as applied in *Hearndon* is a narrow exception and limited to intentional torts. 123 So. 3d at 84.  The plaintiffs in *Cisko* sued the Diocese of Steubenville for negligence related to physical and sexual abuse allegedly suffered between 1966 and 1967, but not recalled until 2005 because of traumatic amnesia. *Id.*  The trial court found that the plaintiffs' negligence claim was barred by the four-year statute of limitations after concluding that the delayed discovery doctrine, as applied in *Hearndon*, did not apply to the negligence action. *Id.*  The Third District agreed, reasoning that the court in *Hearndon* limited its holding "to the specific cause of action: a suit for intentional tort against the perpetrator." *Id.*  The court found support in a plain reading of *Hearndon*, as well as the Supreme Court's discussion in *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002),[6] and the absence of any statutory endorsement to extend the statute of limitation in sexual abuse cases to causes of actions other than intentional torts. *Id.* at 84-85.

### c.   Application of *Hearndon* and *Cisko*

As this is a diversity case, in the absence of a controlling decision from the Florida Supreme Court, this Court must follow decisions from the Florida intermediate appellate courts unless there

---

[5] Section 95.11(7) provides that:
FOR INTENTIONAL TORTS BASED ON ABUSE.—An action founded on alleged abuse, as defined in s. 39.01, s. 415.102, or s. 984.03, or incest, as defined in s. 826.04, may be commenced at any time within 7 years after the age of majority, or within 4 years after the injured person leaves the dependency of the abuser, or within 4 years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the abuse, whichever occurs later.
Fla. Stat. § 95.11(7).

[6] *Davis* involved a suit by an elderly mother suing her children to recover stolen money.  832 So. 2d at 708-09. The Fourth District extended the delayed discovery doctrine to the facts of *Davis*, finding that it is not limited to the facts of *Hearndon*. *Id.*  The Supreme Court reversed and held that the delayed discovery doctrine did not apply and stated that "*Hearndon* is limited to the specific facts in that case." *Id.* at 712.

is some persuasive indication that the Supreme Court would decide the case differently. *Raie v. Cheminova*, Inc., 336 F.3d 1278, 1280 (11th Cir. 2003); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations and quotation omitted) ("Absent some indication that the Florida Supreme Court would hold otherwise, federal courts are bound to adhere to the decisions of Florida's intermediate courts."). Indeed, the Florida Supreme Court has held that "[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme Court]." *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) (quoting *Stanfill v. State*, 384 So. 2d 141, 143 (Fla.1980)); *see also McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). If there are no state decisions on point, this Court "may make an educated guess as to what the Florida courts would decide if this case were presented to them." *Smigiel v. Aetna Cas. and Sur. Co.*, 785 F.2d 922, 925 (11th Cir.1986) (citation omitted).

The Florida Supreme Court has not spoken on the precise issue of whether the delayed discovery doctrine applies to non-intentional tort claims for childhood sexual abuse brought against non-perpetrator tortfeasors. It has, however, expressly stated that "*Hearndon* is limited to the specific facts in that case." *Davis*, 832 So. 2d at 712. The Supreme Court also explained that "in the narrow circumstance of lack of memory in childhood sexual abuse cases, the doctrine was appropriate because the lack of memory was caused by the abuser-a situation similar to the statutory circumstances to which the doctrine applies." *Id.* at 710. The Third District Court of Appeal has held that the doctrine does not apply to non-intentional tort claims. *Cisko*, 123 So. 3d at 84.

Plaintiff brings claims against the Church, the School, and the Diocese for respondeat superior, negligent supervision and retention, negligence, and breach of fiduciary duty. Absent some persuasive indication that the Florida Supreme Court would decide the case differently, the holding in *Cisko* likewise precludes Plaintiff's negligent supervision and retention, negligence, and breach

7

of fiduciary duty claims.[7]

Moreover, the Eleventh Circuit has also recognized that "*Hearndon's* expansion of the statutory delayed discovery doctrine is as narrow as can be." *Raie*, 336 F.3d at 1281-82 (concluding that *Hearndon* was an exceedingly narrow decision that does not justify similar extensions of the delayed discovery rule to instances beyond those for which the Florida Legislature provided by statute.").

Accordingly, *Cisko* will be followed as Florida substantive law and Plaintiff's negligent supervision and retention, negligence, and breach of fiduciary duty claims are barred by the statute of limitations as a matter of law.

### 2.   Count III--Respondeat Superior/Vicarious Liability

Plaintiff seeks to hold all of the Church Defendants vicariously liable for the acts of Caridad and Biggers under the doctrine of respondeat superior. Defendants first contend that this claim is likewise barred by the statute of limitations, as discussed, and summarily classify the claim as one grounded in negligence. Second, they assert that as a matter of law, the acts of Caridad and Biggers fall outside the course and scope of their employment and did not further the purpose or interest of the Church Defendants. Plaintiff responds that the claim is based on the intentional torts of Caridad and Biggers, and therefore not time-barred by operation of the delayed discovery doctrine, regardless of whether this Court follows *Cisko*. Second, he argues that whether Caridad's and Bigger's conduct falls outside the course and scope of their employment and was in furtherance of the interests of the Church Defendants are questions of fact not yet ripe for review.

---

[7] The application of the doctrine to Plaintiff's respondeat superior claim is discussed *infra*.

Under the doctrine of respondeat superior, an employer can be vicariously liable for the acts of its employees performed within the course of their agency or employment. *Dieas v. Assoc. Loan Co.*, 99 So. 2d 279, 281 (Fla. 1957). Unlike a cause of action for negligent hiring or retention which is grounded on the negligence of the employer, the negligence of the employer is irrelevant to a cause of action based on respondeat superior. *See Island City Flying Serv. v. Gen. Elec. Credit Corp.*, 585 So. 2d 274, 278 (Fla. 1991) (citing *Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954)). Under the theory of respondeat superior, the employer is not liable if the employee is not liable. *Mallory*, 69 So. 2d at 315; *Bankers Multiple Line Ins. Co. v. Farish*, 464 So. 2d 530, 532 (Fla.1985) ("when a principal's liability rests solely on the doctrine of respondeat superior, a principal cannot be held liable if the agent is exonerated."). It follows that Plaintiff's claim against the Church Defendants alleging that they are vicariously liable for the acts of Caridad and Biggers is based on the intentional torts, allegedly committed by them, not on the negligence of the Church Defendants. Accordingly, this claim is grounded in intentional tort to which the delayed discovery doctrine applies under *Hearndon* and *Cisko*, and is not time-barred.

Admittedly, the application of the delayed discovery doctrine to this claim is distinguishable from *Hearndon* and *Cisko* in that it is not a claim directly against the perpetrator. However, because the liability of the Church Defendants would be vicarious and based solely on the alleged acts of the abusers/perpetrators, it necessarily falls within the narrow application of the delayed discovery doctrine of *Hearndon*. *See Arthur v. Unicare Health Facilities, Inc.*, 602 So. 2d 596 (Fla. 2d DCA 1992) (medical malpractice statute of limitations applies to causes of action against an employer for vicarious liability "if liability is predicated solely upon the acts of a professional employee who has the benefit of the statute.") (citing *Sheils v. Jack Eckerd Corp.*, 560 So. 2d 361 (Fla. 2d DCA1990) (statute of limitations for actions for professional malpractice was applicable to claims against

9

employer predicated solely on the negligence of the employee)).  Moreover, it is persuasive that section 95.11(7), on which both *Hearndon* and *Cisko* partly rely, contains no limitation that the claim be one against the perpetrator in order for it to apply.

The next question is whether the acts of Caridad and Biggers, as alleged in the Complaint, plausibly fall within the course and scope of their employment and were to further the purpose or interest of the Church Defendants.  "Under the doctrine of respondeat superior, an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer."  *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 356 (Fla. 3d DCA 2001) (citing *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985)); *Perez v. Zazo*, 498 So.2d 463, 465 (Fla. 3d DCA 1986) ("It is entirely clear that responsibility for the intentional wrongful acts of a servant-employee may be visited upon his master-employer under the doctrine of respondeat superior only when that conduct in some way furthers the interests of the master or is at least motivated by a purpose to serve those interests, rather than the employee's own.")(footnote omitted).  "Under Florida law, an employee's conduct is within the scope of his employment where: 1) the conduct is of the kind he was employed to perform; 2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and 3) the conduct is activated at least in part by a purpose to serve the master."  *Iglesia Cristiana La Casa Del Senor, Inc.*, 783 So. 2d at 357 (citing *Sussman v. Florida E. Coast Props., Inc.*, 557 So. 2d 74, 75–76 (Fla. 3d DCA 1990)); *Gowan v. Bay Cnty.*, 744 So. 2d 1136, 1138 (Fla. 1st DCA1999).

"'Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the

employer.'" *Special Olympics Florida, Inc. v. Showalter*, 6 So. 3d 662, 665 (Fla. 5th DCA 2009) (quoting *Nazareth*, 467 So. 2d at 1078).   However, courts have recognized an exception where the employee/tortfeasor was assisted in accomplishing the tort by the existence of the employee/employer relationship. *Iglesia Cristiana La Casa Del Senor, Inc.*, 783 So. 2d at 357 (citing *Nazareth*, 467 So. 2d at 1078); *Grice v. Air Products and Chem., Inc.*, No. 3:98-cv-205/RV, 2000 WL 353010, *13 (N.D. Fla. Feb. 7, 2000) (citing *Hennagan v. Dep't of Highway Safety and Motor Vehicles*, 467 So. 2d 748 (Fla. 1st DCA 1965)).

A number of courts have concluded that sexual abuse by members of the clergy does not fall within the course or scope of employment as a matter of law, even at the motion to dismiss stage. *See, e.g.*, *Elders v. United Methodist Church*, 793 So. 2d 1038, 1039 (Fla. 3d DCA 2001) (affirming dismissal of respondeat superior claims); *Tell v. Roman Catholic Bishops of Diocese of Allentown*, CIVA09C05171JAP, 2010 WL 1691199, *11 & n.61 (Del. Super. Apr. 26, 2010) ("The courts which have considered the issue have overwhelmingly, if not uniformly, have held that a priest who sexually abuses another is not acting within the scope of his employment.") (collecting cases); *Doe v. Norwich Roman Catholic Diocesan Corp.*, 268 F. Supp. 2d 139, 142 (D. Conn. 2003) ("Usually, it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business. . . . But there are occasional cases where a servant's digression from duty is so clear-cut that the disposition of the case becomes a matter of law. . . . Cases of sexual abuse often represent such a strong deviation from furthering an employer's business.") (citations and quotation omitted).

Notwithstanding the rational of these cases, an exception to the general rule is recognized in Florida, where "the tortfeasor was assisted in accomplishing the tort by virtue of the employer/employee relationship." *Iglesia Cristiana La Casa Del Senor, Inc.*, 783 So. 2d at 357.

11

Based on the allegations in the Complaint, and because it is a fact intensive inquiry, this issue is more appropriately addressed at the summary judgment stage. *See, e.g.*, *id* at 353 (case proceeded to jury trial on the issue); *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009). For example, the Complaint includes allegations that Caridad, a Priest and a teacher, and Biggers, a teacher and Choir Master, abused Plaintiff on Church and School property, utilized their positions of authority to manipulate and intimidate Plaintiff, a minor at the time, had access to and the opportunity to abuse Plaintiff because of their official positions and duties, and that Biggers abused Plaintiff while giving him piano lessons as part of his education and while on Church choir trips. Therefore, this claim survives Defendants' motions to dismiss.

### 3.    The Corporate Existence of the Church and School

The Church also moves to dismiss Plaintiff's Complaint on the ground Plaintiff has failed to plead sufficient facts to establish the existence of either Defendant as a corporate entity at the time the alleged abuse occurred. For example, Plaintiff alleges that the School "was founded in 1951 but not incorporated until 2000" and merely that the Church "is a Florida non-profit religious institution." (Dkt. 1 at ¶¶ 2, 3). However, Plaintiff also alleges that "[u]ntil 2000, Defendant Church and Defendant School were a single entity operating within the Diocese." (*Id.* at ¶ 3). Plaintiff concedes that under Florida law, an unincorporated church does not have the capacity to be sued, but asserts that he is not required to prove the corporate existence of the Defendants at this time. (Dkt. 11 at 18 n.8).

Federal Rule of Civil Procedure 9(a) states: "Except when required to show that the court has jurisdiction, a pleading need not allege: (A) a party's capacity to sue or be sued." Fed. R. Civ. P. 9(a)(1)(A). Plaintiff's allegations do not conclusively establish whether the Church or the School lack capacity to be sued. In addition, neither the Church nor the School have specifically denied that

they lack the capacity to be sued. *See* Fed. R. Civ. P. 9(a)(2). The capacity of the Defendants to be sued is more appropriately addressed in a dispositive motion.

### 4.      Defendant Caridad's Motion to Dismiss

For the reasons discussed, Caridad's Motion to Dismiss (Dkt. 5) will be denied.  In addition, as Plaintiff's claims against Caridad and Biggers are for battery, abuse, and sexual abuse, intentional tort claims, the delayed discovery doctrine as adopted in *Hearndon* applies to these claims, and they are not barred by the applicable statute of limitations.

Caridad also contends that the Court does not have subject matter jurisdiction over  Counts I-VI pursuant to the First Amendment.  He argues that the negligent supervision and retention claim against the Church Defendants is barred by the First Amendment.  The Florida Supreme Court has held otherwise.[8] *Malicki v. Doe*, 814 So. 2d 347, 365 (Fla. 2002) (the First Amendment does not bar claims for negligent hiring and supervision); *also Doe v. Evans*, 814 So. 2d 370, 377 (Fla. 2002) (holding that the First Amendment does not bar consideration of negligent hiring and supervision and breach of fiduciary duty claims against a religious institution based on alleged sexual misconduct a member of its clergy with a parishioner).  "[W]ith regard to a third party tort claim against a religious institution, . . . the First Amendment does not provide a shield behind which a church may avoid liability for harm arising from an alleged sexual assault and battery by one of its clergy members." *Malicki v*, 814 So. 2d at 365.

Lastly, Caridad argues that Plaintiff may not proceed anonymously as "John Doe."  Federal Rule of Civil Procedure 10(a) requires that "every pleading" in federal court "must name all the parties." Fed. R. Civ. P. 10(a).  However, "[a] party may proceed anonymously in a civil suit in

---

[8] The Florida case Caridad relies on, *Doe v. Dorsey*, 683 So. 2d 614 (Fla. 5th DCA 1996), did not decide the case based on the First Amendment and nevertheless, was abrogated by *Malicki v. Doe*, 814 So. 2d 347, 365 (Fla. 2002).

federal court by showing that he 'has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Plaintiff B v. Francis*, 631 F.3d 1310, 1315-16 (11th Cir. 2011) (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir.1992)). *Francis* considered whether "the issues involved are matters of a sensitive and highly personal nature" such that the "practice of disclosing the parties' identities 'yields to a policy of protecting privacy in a very private matter.'" *Id.* (quoting *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979)).[9] It is not enough to suggest that a party may "suffer some personal embarrassment." *Frank*, 951 F.2d at 324. The court found that "[t]he issues involved in this case could not be of a more sensitive and highly personal nature—they involve descriptions of the Plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors who were coerced by the Defendants into those activities." *Id.* at 1316-17.

Plaintiff's allegations of childhood sexual abuse by members of the clergy and employees of the Church, School, and/or Diocese while he was a minor are similarly of a sensitive and highly personal nature. Moreover, at this time Plaintiff only seeks to remain anonymous in court filings. (Dkt. 7 at 4 n.1). Caridad does not suggest he will suffer any prejudice, and therefore Plaintiff may proceed anonymously at this time. However, any request to proceed anonymously other than in court filings must be formally made and demonstrate a "substantial privacy right which outweighs the

---

[9] The court also explained that "[t]he first step in analyzing a plaintiff's claim of a substantial privacy right is to look at the three factors analyzed in SMU. First, are the plaintiffs seeking anonymity challenging governmental activity? Second, will they be required to disclose information of the utmost intimacy? Third, will the plaintiffs be compelled to admit their intention to engage in illegal conduct and thus risk criminal prosecution?" *Francis*, 631 F.3d at 1316 (internal citation omitted). However, these factors "were not intended as a rigid, three-step test for the propriety of party anonymity. Nor was the presence of one factor meant to be dispositive. Instead, they were highlighted merely as factors deserving consideration. A judge, therefore, should carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Frank*, 951 F.2d at 323 (citations and quotation omitted).

14

customary and constitutionally-embedded presumption of openness in judicial proceedings." *See Francis*, 631 F.3d at 1315-16.

Accordingly,

1.     Defendant, Jon Caridad's, Motion to Dismiss Plaintiff's Complaint (Dkt. 5) is **GRANTED** to the extent that Counts IV, V and VI are **DISMISSED** *with prejudice* and **DENIED** as to Counts I, II and III.

2.     Defendant, Episcopal Diocese of Southwest Florida, Inc.'s, Motion to Dismiss Plaintiff's Complaint (Dkt. 8) is **GRANTED** to the extent that Counts IV, V and VI are **DISMISSED** *with prejudice* and **DENIED** as to Count III.

3.     Defendants St. John's Episcopal Parish Day School, Inc.'s and St. John's Church's Motion to Dismiss (Dkt. 6) is **GRANTED** to the extent that Counts IV, V and VI are **DISMISSED** *with prejudice* and **DENIED** as to Count III.

4.     Defendants shall answer the Complaint within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** this 11ᵗʰ day of February, 2014.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record